Case number 22-5093 Adam Robinson v. Department of Homeland Security Office of Inspector General Ms. Cooney for the appellant, Ms. Lyons for the appellee. Professor Wolfman, good morning. Good morning, your honors. I'm Brian Wolfman for appellant Adam Robinson, and I'm pleased to introduce Kira Cooney, student counsel in the Georgetown Appellate Courts Immersion Clinic, who will present argument this morning. Thank you. Thank you. May it please the court, I would like to reserve two minutes of my time for rebuttal. King v. Dole is clearly incorrect and should be overruled. This court should then grant Mr. Robinson equitable tolling because his one-day late filing was caused by the misinformation from the district court clerk that filing deadlines were not being strictly enforced due to the pandemic. Absent a clear statement from Congress, statutory time limits running against the government are non-jurisdictional and presumptively subject to equitable tolling. The instruction in section 7703B2 that claims must be filed within 30 days is a quintessential claim processing rule that merely instructs the litigant to take a certain step by a specified time. This mirrors the provisions found non-jurisdictional in Irwin 30 years ago, in Beckler last term, and in Wilkins just last month. And four other circuit courts that have expressly addressed section 7703B2 have determined that it is a non-jurisdictional claim processing rule. This court should follow the approach it took in Jackson v. Modley when it overruled a long-standing precedent holding a statute of limitations as jurisdictional in light of intervening Supreme Court cases and sister circuit precedent. For it to be considered non-jurisdictional if we were to go that route, do we have to then also indicate that it's a claim processing rule? Or can we just stop at whether it's jurisdictional? So once it's determined that it's non-jurisdictional, the Supreme Court has set up two different options. That is, in Hamer, it explains that either a rule is jurisdictional and that when it comes to time limits, the only rules that are jurisdictional are those that transfer adjudicatory authority from one Article III court to another. Whereas other time limits that govern transfer of authority from non-Article III courts to an Article III court are claim processing rules. So it has set up two different options between jurisdictional and claim processing rules. It could still be mandatory, but it would be a claim processing rule. And that is what the court determined in Jackson v. Modley when it used an iron footnote to overrule that prior precedent before it turned to equitable tolling, which if there are no further questions regarding jurisdiction, I will now turn to. So the claim processing is not jurisdictional, correct? Yes, Your Honor. And claims processing hasn't been raised at all by government in this case. So that argument is not even before us, is it? So the government raised below whether or not the claim was raised in its brief here. It did not. It did not raise it. It hasn't mentioned claims processing. So that issue just isn't for us. No, Your Honor. Thank you. I will now turn to equitable tolling. Equitable tolling is warranted on this record. I'm sorry, can I back you up on one thing? Yes. I apologize. On the jurisdictional argument, the government argues that the provision issued here has a notwithstanding clause to introduce it. And that's different from other examples where time limits have been found to be non-jurisdictional. What is your response to that? So the notwithstanding clause does not turn the provision into a jurisdictional hurdle because it does not speak in jurisdictional terms or to the power of the courts, which is what the Supreme Court has instructed is required for a jurisdictional rule in Quy Phan Wong and in several other cases. The types of language that is jurisdictional is something along the lines of the tax court shall have jurisdiction, which is what the Supreme Court discussed. In fact, there is no comparable jurisdictional language in Section 7703B2. This court should then grant Mr. Robinson equitable tolling because within only a 30-day filing period that began and ended during the COVID-19 pandemic, Mr. Robinson prepared a full federal complaint demonstrating that he was diligently pursuing his rights and it was the misinformation from the district court clerk that created an extraordinary circumstance standing in his way. But can an individual in a clerk's office overrule essentially any standing order by that clerk's office? No, and we do not argue that the district court overruled the standing order, which did not itself pull statute of limitations, but it also did not abrogate equitable tolling where it would otherwise be available. I would also note that the standing order instructed that litigants with emergency filing should call the clerk's office for further information, and it is reasonable for a pro se litigant in Mr. Robinson's position to have thought that that suggested when he only had a few days left before the filing deadline to call the clerk, and then the clerk informed him filing deadlines were not being strictly enforced. But aren't we also looking at extraordinary circumstances here, you know, for the equitable tolling argument, you have their diligence, and then the extraordinary circumstances. But here, what would you say was outside of the litigants control to get to that extraordinary circumstance? Yes, it was the misinformation from the district court clerk's office that filing deadlines were not being strictly enforced. And so that information, it was reasonable for a pro se litigant, as many of the courts have recognized, to rely and believe information from a government official or district court clerk. And when that information is misleading or inaccurate, it may be sufficient to create an extraordinary circumstance out of his control. And the district court recently recognized that in a case, which we started at page 18 of a lot of reports of appeal. They also have held that this information from a government official, while it might bear on diligence, it's not itself an extraordinary circumstance. I had taken from your brief, it was COVID situation. And that's what necessitated calling the clerk's office. And in fact, the standing order, the very one the government relies on, instructed people who were not going to be filed during the daytime. If you weren't filing after hours, you can't use the drop box. They were instructed to call the clerk's office for directions on how to make their filing. That's what the standing order said. And since presumably he wasn't planning to file it at midnight and use the drop box, he was trying to find out how to file in the daylight hours. And that it was that aspect of the COVID situation where the standing order told him. You can't use the drop box, you've got to get directions from the clerk's office. And so the COVID emergency situation that was causing the extraordinary circumstance. COVID is relevant to the evaluation and the court should consider the full set of circumstances, but it was the clerk's misinformation that creates the extraordinary circumstance. But it was a COVID situation that instructed him to talk to the clerk's office to figure out how to make a filing. Yes. They couldn't use the drop box during daylight during business. So what the what the standing order actually said was that litigants with emergency filings should call the clerk's office for further instructions. And that is what assuming Mr. Robinson said, there's a drop box. We use after hours or with the clerk's office is closed, but the drop box cannot be used during business hours. Instead, you should call the clerk's office for directions. Yes, your honor. And so that is what Mr. Robinson did. He called the clerk's office for further instruction. And then the clerk's office informed him that filing deadlines were not being strictly enforced, which is what caused him to then mail his complaint. And as the government recognizes at page 26 of its brief, quote, the most that can be said of the evidence in the record is that the clerk's statement convinced Robinson that he can mail the pleading and risk it being a day or two or more late without consequence. Didn't the clerk didn't the clerk also say, just get it in? Just get it in here. The clerk said, and this is a 59 that it's most important just to file. And so we think that Mr. Robinson, even though the clerk had said that filing deadlines were not being strictly enforced, the fact that he then chose to mail it that same day demonstrates that he continued to diligently pursue his rights. However, the government, as it concedes, the clerk had convinced Mr. Robinson there would be no adverse consequences by mailing it. And as the court has recognized in many other cases, justifiable reliance on a representation from a government official may be sufficient to warrant equitable tolling. But is there anything in the record that indicates he could not have done this electronically, which is what 99.9% of people do now? No, but I would reiterate that Mr. Robinson does not bear the burden of showing what other paths he could have take. He really needs to show that it was the extraordinary circumstance that caused the delay in the standing order. The option of doing it by a file that was in the standing. Yes, but what was also in the standing order was the instruction to call the clerk's office. And that is what Mr. Robinson did. And he then received misinformation that resulted in him mailing the complaint and cause the untimely. And not to at all impugn Mr. Robinson's integrity or his character. But one of the things that concerns me is kind of this being a floodgates case from the standpoint that everybody could say I called the clerk's office. But I don't how much collaboration do we need, for example, a date stamp on that? He actually had a postmark for that day. He actually put in the mail because you got to check. That's a couple of days later. And so how much more collaboration what we need other than just saying I call the clerk's office ignore the standing order because an individual. Essentially, Trump's written standing order out of the clerk's office. So, Mr. Robinson did include at J59, a reference to the telephonic record of his call, which occurred at 1013 a.m. in the morning. And I would note that at this stage, this is at the motion to dismiss stage. Mr. Robinson was entitled to all reasonable inferences drawn in his favor and the light of the evidence viewed in the light most favorable to him. I would also say that a floodgate problem is not an issue here because this is squarely within this court's existing precedent precedent in Gerald, the U.S. Coastal Service. The court recognized, as I've mentioned before, that just the reasonable reliance on a government official may warrant equitable tolling. So we're not asking you to step beyond your existing precedent. And it aligns with recent D.C. District Court decisions as well. Let me ask you, how do you read notwithstanding any other provision of law? What do you think that refers to? So we believe that notwithstanding any other provision of law merely instructs the litigant that he should look at the filing period in Section 7703B2, which is 30 days, as opposed to looking for a contrary filing period in any other provision, such as the 60 day filing period in Section 7703B1 or the 90 day filing period applicable to Title 7 claims. So it really instructs the litigant the relevant filing period for a mixed case is that in 7703B2 and not elsewhere. Are you saying, because the way I read it is notwithstanding any other provision of law, you've got three other statutes directly above that, which do have their own filing dates. I mean, it seems to be pretty clear that notwithstanding any other provision of law, after you've cited three other provisions of law that have their own filing dates, that that's what you're talking about. Yes, Your Honor, exactly. So that is that is exactly our point. Okay. All right. We'll give you a couple minutes to reply. Thank you so much. Ms. Lyons, you're a familiar face. Good morning, Your Honor. Nice to see you again. May it please the Court. I am Jane Lyons from the U.S. Attorney's Office, and I'm here on behalf of the Department of Homeland Security's Office of Inspector General. Can you all hear me? I don't feel right. Everything's okay? Yeah. So, what we're here talking about today is initiating a civil complaint, a civil action, which requires delivery of the complaint, a receipt of the complaint by the district court's clerk's office. I think I'd like to start with the language of the district court standing order, which has been discussed here at length this morning, and I think a bit, a bit incorrectly. The only direction for calling the clerk's office was for emergency or sealed filings. The first two sentences of paragraph eight of standing order 20-9 say, quote, the clerk's office will remain open, although public access will be restricted. Electronic filings through CMECF will remain available, and here's the important part, self-represented litigants may date stamp and deposit papers in drop boxes available at the entrance to the courthouse. In other words, there's no change for regular civil business in the courthouse. And even more importantly, in the paragraph immediately above that, paragraph seven in bold and underlined language says statutes of limitations unaffected. Order does not hold any applicable statute of limitations. And in this case, we know that Mr. Did I misread or read something else when it said the drop box shouldn't be used during daylight during working hours? Dropbox may not be used for emergency and sealed matters. That's where you're called to call for additional instructions, which I think one would fairly guess would mean if you have an emergency or sealed filing, we will meet you at the door and take it from you would be my guess. I don't know, but this is not an emergency or a sealed matter. This is one of the most routine things that happens in a courthouse. Someone has to file a lawsuit and the initiation of a lawsuit. Under a deadline that Mr. Robinson knew. From the notice, he received the merit systems protection board was statutory section. Seventy seven. Oh, three B appears in the notice. And he knew, so he knew the deadline. We have no, no disputes in this case about when the deadline was or what happened. And the record shows he was ready to file on the same day. He had the conversation with. And the district court correctly that. He did everything he was going to do to file that day. So, the conversation doesn't appear to have made any difference in what he was what he was doing. Did you did not tell him to use the mail? The clerk said in some substance, just file. Don't worry. Not file whenever you feel like. So, there's the language in the notice. The clerk statement saying it's more important to file and he didn't file whenever he felt like it. He filed. From what he thought he mailed it with four days from a suburb of Washington, D. C. The post office website itself would tell him it would be there within two days. He thought two days. The check was dated two days later. So, this isn't a case of somebody who did it whenever he felt like it. The question was in the middle of the worst, worst time in the pandemic. And the question is, do I need to go drive into D. C. and go into a building or interact with other people? Or can I just put a stamp and put it in the mailbox? And when I'm told just file and be lawyers, we know, you know, file, I can have different permutations. What does that mean? Sometimes mailing is filing. Sometimes it's not, but he is pro se. So, this isn't I mean, this isn't someone who wasn't diligent. I understand you're arguing about extraordinary circumstances, but he was not someone who was taking his time. And most of us would think if you mail something from the suburbs and into D. C. that it's going to get there within four days. Perhaps during ordinary times, your honor, but I think the pandemic sheds a different view of that. So, the pandemic is an extraordinary circumstance from the government's perspective. No, that's not what I'm arguing. I'm arguing that as a young versus was the mail slowed down. I don't even remember that. I don't remember that part of it. I don't remember what I remember from that time. Honestly, your honor is that I used to collect mail out of the mailbox and leave it in a box for three or four days before I touched it because we were afraid we'd get coded from the mail. Maybe the clerk's office did the same thing. No, there's no evidence to suggest that on the record. A party is in young versus the court held that when a party is lulled into missing a deadline, missing a formal deadline by a court order or a ruling. But that doesn't apply to statements made by the clerk's office staff. That's something the court has ruled as sort of out of bounds rely on to excuse what you're doing and Houston be lack in the Supreme Court case. Houston be lack the Supreme Court talks about why there's a need for the prisoner mailbox by prisoners can't do it. And the reason it ultimately is it can't rescue themselves. If there's a last minute problem, if they mail something in and it isn't or hasn't arrived as expected, they can't rescue themselves. And the real issue with Mr. Robinson's record here is that he has not made any additional efforts after he's mailed to ensure the timely receipt. He doesn't check doesn't say that he checked his bank account to see if the cash was checked. He doesn't say that he ever considered going to the clerk's office at the last minute on Thursday or Friday with another copy of the complaint to make sure it was in on time. And that's what reasonably diligent people would do. People allowed to go into the clerk's office at that time because of coven pardon me where people allowed to physically enter the clerk's office. People were allowed to enter the clerk, not the clerk's office, the courthouse to put in, put things in the dropbox, which is the same thing. I know, but he thought this was an emergency filing. He's like, he's thinking I've got only a few days. Maybe he doesn't know what an emergency filing is. Well, maybe, but the gaps in the record shouldn't be filled in by this kind of speculation. Should they at the we're at the are we at the twenty six stage here? No, if that is not the proper standard to evaluate in carrying a burden and there must be no, we, we evaluate burdens all the time. Differently. We evaluate the burden to state a claim at twelve B six differently than we evaluate the burden to sustain a claim at summary judgment. I'm not changing the burden here. I'm just saying, do we need to make inferences at this stage until there's more information? No, your honor. I don't believe so. The burden here is a showing to carry a burden of proof that complaints have to show a claim. This is different. No, no, no. But I'm saying that show doesn't make a difference here. The question is how much you have to show at the preliminary twelve B six stage as opposed to a summary judgment. After there's discovery and development of a full record, I mean, district courts would be well within their discretion to say, all right, timeout. Let's just figure out before we go any further. Let's find out exactly what was going on for this equitable tolling claim and have. I don't know if he needs discovery. If you all needed to ask some questions or interrogations to get the record fleshed out. If he wants to have a chance to flesh the record out more than that can all get resolved. This is this is the kind of issue that's typically resolved at the at the outset of the case. It is a defense that is a very factual one. That's it's it's kind of the facts all in the possession of Mr. Robinson that matter. And he had the opportunity to provide them. He had the assistance of counsel to provide a second declaration here, right? But we need to take how do we view those facts and the reasonable inferences from them? That's what I'm asking you. You review these facts to see if they establish the burden of and take reasonable inferences from them in his favor. I don't believe he is entitled to reasonable inferences, but not not too far. I have to be well supported to show reasonable diligence and extraordinary circumstances shown to have prevent timely filing. And I know we don't take reasonable inferences at this stage, not not not to change the burden, but just to determine whether the burden is met. That's all I'm asking. Have we held that for other courts? I don't I don't think we have a clear ruling on exactly that. Sometimes in this sort of situation, there's a presumption, but there's there are no real presumptions that apply in this context. Right. Did you have any arguments on the we don't have to get to equitable tolling if there's not jurisdiction? I didn't know if you were just resting on your brief on that or had no, I'd be happy to address that. I just want to make sure I didn't want to say anything else on the equitable tolling. Our basic position on the equitable tolling is nothing forwarded. His effort is reasonable efforts to get the complaint there. Turning to the King versus Dole argument, that's what you're asking me about, correct? There are a number of reasons for not using the I think it is the express lane for on bank consideration. First, the court's already rejected it in full in this case, and there are good reasons for that. I have to be careful today to keep my job because only the solicitor general of the United States is able to present arguments. And a solicitor general has not approved any of the arguments I wrote up in draft briefs for presentation to the court. So, but I would say, because I was also the lawyer in Jackson versus Motley last time. So, maybe there's a set of steak knives in my future, but I want to talk about the court has emphasized that the is a particularly comprehensive remedial scheme. And it and Congress was unusually intentional in creating and depriving people of rights that that can be seen to be in somewhat similar situations. And, of course, I refer to the court to cases like file bar versus Department of Transportation for versus James. These are familiar here. Administering this statute, Judge Henderson, you were looking at the different sections of the immediately proceeding language. There is no doubt that today under one of the previous sections in the federal circuit, Mr. James would have been dismissed for untimeliness because the federal circuit is regarding that its own time limitation as jurisdictional. And so there's a there's a fairness across the application of the here. Of course, I already say this, the court should have the benefit of the solicitor general's views on why this should happen. But I'm just a little confused on what we need the solicitor general's views on. You need the solicitor general's views on whether to overrule King versus. The benefit that you will get from a fully articulated and consider. General doesn't usually get involved as at least the police stage. The solicitor general's office becomes involved when there is a petition for a hearing. And we are asked to initially provide a response to a petition, and then they typically are involved beyond that. OK, the other reason to be to be cautious here is that the just the fact alone of whether the provision is jurisdictional is not the end of the inquiry in terms of equitable tolling. Because Supreme Court has more recently, including in January this year. In our versus McDonough recognize that equitable polling can be disallowed in even non jurisdictional provision. So, even solving the jurisdictional issue doesn't necessarily in the inquiry. Do you think there's anything in the language here that would foreclose application of equitable tolling? I believe that notwithstanding any other provision of law language could be read to include the doctrine of equitable tolling. The doctrine of equitable tolling has existed longer than the civil service reform act. And it is at least possible that it is swept within that language. Yes, your honor. And that language is particularly clear and emphatic. Because, and this was part of what the court in King versus goal, but it says, notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days. I mean, I know this is much like language and other statutes. The Supreme Court has considered, but the Supreme Court considered this very provision in Lindahl and at least has not come back. And in terms of how often comes up there and said, it's just a plain old. It's just a plain old time of filing provision. I never saw it. I'm saying right. So, it's just plain old routine ordinary time of filing provision. There's been a lot of writing on these issues for sure. And it's worth it's worth the benefit of a very careful consideration before overturning this court's precedent and and. Recognize that Lindahl may have been overcome. We have any further questions. No, thank you respectfully ask that you affirm and not. Use an answer. Thank you. Miss, can you why don't you take 2 minutes? Thank you very quickly. Despite the notwithstanding language, I would like to have the 4 other circuits have determined post or when the equitable tolling is appropriate for section 7703 V2. Regarding the equitable tolling issue, the pandemic is relevant here because it renders Robinson's conduct reasonable and he has met his burden of showing that the misleading information. Caused him to put the complaint in the mail. The government is free to prove otherwise with additional evidence on summary judge. I'm happy to address any further questions you may have. Yes, thank you.
judges: Henderson, Millett, Childs